UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JIMMY L. ROBISON,                 )  | |
|                                   )  | |
|    Plaintiff,      )  | |
|                                   )  | |
| v.                                )  | Case No. 1:04-CV-00123 |
|                                   )  | |
| THE PALMER GROUP, INC., and       )  | |
| KENWORTH OF INDIANAPOLIS, INC.,   )  | |
| d/b/a FORT WAYNE TRUCK CENTER,    )  | |
|                                   )  | |
|    Defendant.      )  | |

**MEMORANDUM OF DECISION AND ORDER**

This matter is before the court on several motions. Defendant Kenworth of Indianapolis, Inc., d/b/a Fort Wayne Truck Center[1] ("Kenworth") filed its Motion for Summary Judgment on April 1, 2005. Plaintiff Jimmy L. Robison ("Robison") filed his response to said motion on May 2, 2005. On May 20, 2005 Kenworth filed a reply memorandum in support of its Motion for Summary Judgment as well as a Motion to Strike Inadmissible Evidence. Finally, on May 26, 2005, Robison filed a response to the Motion to Strike. For the reasons set forth below, Kenworth's Motion for Summary Judgment is GRANTED, and the Motion to Strike is MOOT.

**STATEMENT OF FACTS**

Jimmy Robison was employed by Kenworth of Indianapolis, Inc., d/b/a Fort Wayne Truck Center ("FWTC") as an Outside Salesperson. He worked for FWTC for approximately eleven years. Complaint, ¶ 1. In 1999 and 2001 Robison sustained injuries to his back requiring surgery and received worker's compensation benefits.  Complaint, ¶ 1.

---

[1]The Palmer Group, Inc., was dismissed as a defendant in this case by Order dated June 9, 2005.

In December 2003, Robison injured his back at home and received medical attention for the injury. Complaint, ¶ 1. Robison was terminated from FWTC on January 5, 2004. Robison alleges he was terminated because of his back injuries, thereby costing FWTC too much money. Complaint, ¶ 1. However, FWTC asserts Robison was terminated for poor work performance. Memorandum in Support of Kenworth's Motion for Summary Judgment, p. 2.

The parties concede that all times relevant to this controversy, FWTC offered a health insurance policy, The Palmer Group Employee Benefit Trust, and Robison was both a participant and beneficiary in the plan. Robison contends that he was wrongfully terminated due to his exercise of rights under the company's health plan, and he brought this action pursuant to 29 U.S.C. § 1140 of the Employee Retirement Income Security Act of 1973 ("ERISA"). Robison also asserts a *Frampton* claim alleging that he has been retaliated against because he sustained a worker's compensation injury and obtained worker's compensation benefits. Complaint, ¶ 1.

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). Rule 56 mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The standard for granting summary

judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 2512; *In Re Matter of Wildman*, 859 F.2d 553, 557 (7th Cir. 1988); *Klein v. Ryan*, 847 F.2d 368, 374 (7th Cir. 1988); *Valentine v. Joliet Township High Sch. Dist. No. 204*, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." *Juarez v. Ameritech Mobile Commun., Inc.*, 957 F.2d 317, 322 (7th Cir. 1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. *Goka v. Bobbitt*, 862 F.2d 646, 649 (7th Cir. 1988); *Guein v. Sendra Corp.*, 700 F. Supp. 973, 974 (N.D. Ind. 1988); *Posey v. Skyline Corp.*, 702 F.2d 102, 105 (7th Cir.). In ruling on a summary judgment motion, the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. *Anderson*, 477 U.S. at 249-251. However, "[i]t is a gratuitous cruelty to parties and their

3

witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. *Mason v. Continental Illinois Natl. Bank*, 704 F.2d 361, 367 (7th Cir. 1983).

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. *Id.* The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586; *First Natl. Bank of Cicero v. Lewco Sec. Corp.*, 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Id.* A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-252.

## DISCUSSION

### I. Motion for Summary Judgment

Plaintiff Robison asserts that he was terminated to prevent him from using further benefits under FWTC's health plan and to retaliate against him for filing workers compensation claims in 1999 and 2001. Section 510 of ERISA, 29 U.S.C. § 1140, prohibits employer conduct which has the "purpose of interfering with the attainment of any right to which [an employee] may become entitled." 29 U.S.C. § 1140.

To establish a prima facie case under § 510, using the *McDonnell Douglas* burden-

4

shifting framework, an employee must show that he (1) belongs to the protected class; (2) was qualified for his job; and (3) was discharged under circumstances that provide some basis for believing that the prohibited intent to retaliate was present.  *Grottkau v. Sky Climber, Inc.*, 79 F.3d 70, 73 (7th Cir. 1996).  If the plaintiff does so, the burden shifts to the defendant to offer a legitimate and non-discriminatory reason for the employment action.  If the defendant makes this showing, the burden shifts back to the plaintiff to show that the defendant's proffered reason was a pretext.  *Little v. Cox's Supermarkets*, 71 F.3d 637, 642 (7th Cir. 1995).

The evidence shows that Robison has not established a prima facie case under § 510.  While Robison qualifies as a member of a protected class (a beneficiary or participant of an ERISA-governed benefits plan), the evidence presented by Robison falls short of meeting his burden of proving a § 510 violation for three reasons: Robison was not qualified for his job, Robison indicated no intention of filing a workers compensation claim during the two-year period preceding his termination, and Kenworth did not harbor the specific intent to interfere with Robison's ERISA rights.

First, Robison's addiction to alcohol and prescription drugs and multiple performance problems rendered him unqualified to perform the necessary functions of his job and FWTC terminated him as a result of multiple job performance problems.  The evidence shows that Robison underperformed his job and his sales numbers were unsatisfactory.  When Robison violated the terms of FWTC's Drug and Alcohol Policy, FWTC had legitimate and non-discriminatory cause to terminate Robison's employment at that time if it so desired.  Instead, FWTC assisted Robison by driving him to a treatment facility.  Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison) and B (Affidavit

5

of Tracy Walters). Robison's multiple performance problems are clearly documented. Specifically, Robison failed to turn in required "call sheet" documentation to management. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). In the one year prior to Robison's termination, FWTC had received several customer complaints about Robison's service. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). During that same period, FWTC discussed with Robison his poor performance on four (4) separate occasions. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). During one of those occasions, Robison exhibited an angry outburst toward his supervisor. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). Robison was admonished for making the delivery person on his route perform some of his duties. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). Additionally, Robison was admonished by FWTC management for failing to treat his supervisor with respect. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. E (Affidavit of Gary Banks). Seven (7) months prior to his termination, Robison received a written reprimand resulting from an argument with a co-worker in the presence of customers. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison), B (Affidavit of Tracy Walters), and C (Affidavit of Richard Wedge). Moreover, FWTC received several additional customer complaints during the week preceding Robison's termination. Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters). FWTC gave Robison an additional opportunity to perform the

necessary functions his job required.  As a condition of Robison's return to his position, Robison signed an agreement on June 4, 2003 that "the sales route must show steady and continuous growth" and that "if any of the rules are not met [Robison] [will] be terminated."  Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. B (Affidavit of Tracy Walters) and C (Affidavit of Richard Wedge).   Yet, Robison's sales numbers remained unsatisfactory.  Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. B (Affidavit of Tracy Walters).  Despite numerous opportunities to improve documented performance problems and FWTC going out of its way to assist Robison, Robison's work performance continued to deteriorate.  Moreover, it is well established in this Circuit that in employment discrimination cases courts do not sit as a superpersonnel department that reexamines an entity's business decision and review the propriety of that decision; the court's only concern is whether the legitimate reason provided by the employer is in fact that a true one.  *Holmes v. Potter*, 384 F.3d 356, 361 (7th Cir. 2004).  In the case at bar, the court finds the reason for Robison's termination provided by FWTC to be legitimate and nondiscriminatory.

      Second, Robison indicated no intention of filing a workers compensation claim during the two-year period preceding his termination and cannot, therefore, meet the burden of causation for a retaliation claim under *Frampton v. Central Ind. Gas Go.*, 297 N.E.2d 425 (Ind. 1973).  Because Indiana does not recognize a claim for retaliation where an employee "reasonably might have" filed a worker's compensation claim, Robison's *Frampton* claim fails.  *See Bricker v. Federal-Mogul Corp.*, 29 F. Supp. 2d 508, 512 (S.D. Ind. 1998).  A successful litigant must demonstrate that his or her discharge was solely in retaliation for the exercise of a statutory or the fulfillment of a statutorily imposed duty "without an independent lawful reason

7

which would justify the otherwise lawful action." *Watkins v. Sommer Metalcraft Corp.*, 844 F. Supp. 1321, 1325 (S.D. Ind. 1994). To prove his claim of workers compensation retaliation, Robison must present evidence that "directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Powdertech, Inc. v. Joganic*, 776 N.E.2d 1251, 1261 (Ind. Ct. App. 2002). It is well established in Indiana that even a span of twelve to thirteen months between a workers compensation claim and an adverse employment action is too "attenuated" to provide the necessary inference of causation. *Mullins v. Lobdell Emery, Inc.*, 2002 U.S. Dist. LEXIS 4924, *15 (S.D. Ind.); *Thurston v. Borden Waste-Away Svc., Inc.*, 1998 U.S. Dist. LEXIS 12105, *37 (N.D. Ind.). In the case at bar, Robison's employment was terminated more than two (2) years after his most recent workers compensation claim. Moreover, Robison was never discouraged from using the benefits available to him under FWTC's health insurance plan or workers compensation plan. In fact, Robison received workers compensation benefits following four work-related injuries between 1994 and 2001. Robison received workers compensation benefits for back injuries sustained on February 9, 1994 (when he slipped on melted ice while moving cores) (Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. A (Deposition of Robison)), September 29, 1998 (when he was lifting clutches and loading them into a truck) (Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison) and C (Affidavit of Richard Wedge)), sometime in 1999 (when he injured himself at work lifting cores) (Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. A (Deposition of Robison)), and again in 2001 (Defendant's

8

Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison)).  Robison did not have another workers compensation injury after 2001 (Defendant's Memorandum in Support of its Motion for Summary Judgment, Exh. C (Affidavit of Richard Wedge)) and did not state any intention of filing a workers compensation claim thereafter.[2]  Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison) and C (Affidavit of Richard Wedge).  Robison cannot meet the "proximity in time" standard, and his *Frampton* claim, therefore, fails.

Third, the evidence shows that FWTC did not harbor the specific intent to interfere with Robison's ERISA rights.  Robison alleges that FWTC actually decided to terminate Robison's employment in 2001 and was attempting to ascertain whether Robison would need another back surgery.  Response to Defendant's Motion for Summary Judgment, p. 7.  The evidence does not support this assertion.  The plaintiff's only evidence to support this assertion rests on the comments made by FWTC management that Robison would never have another back injury on the company.  Robison asks the court to infer that such statement, made some two years prior to Robison's termination, is direct evidence of FWTC's intent to terminate Robison and establishes retaliation.  This court has held that such "stray remarks" that do not meet the criteria to establish retaliation are rarely relevant under the direct method of proof.  *See Kemerly v. Bi-County Svcs., Inc.*, 2003 WL 2259802, *8 (N.D. Ind.).  Robison cannot demonstrate sufficient proximity in time between his receipt of workers compensation benefits in 2001 to his termination in 2004.

For the reasons discussed, the court finds that Robison has not established a prima facie

---

[2]The record is unclear as to what workers compensation benefits Robison received following his 2001 injury.  Apparently, Robison received workers compensation "benefits" following his 2001 injury, but did not file or state any intention of filing a workers compensation *claim* for his injury.  Defendant's Memorandum in Support of its Motion for Summary Judgment, Exhs. A (Deposition of Robison) and C (Affidavit of Richard Wedge).

case under Section 510 of ERISA, 29 U.S.C. § 1140.  Consequently, in light of the overwhelming evidence, the court GRANTS Defendant's Motion for Summary Judgment.

## II.   Motion to Strike Inadmissible Evidence

On May 20, 2005 Defendants filed a Motion to Strike Inadmissible Evidence, seeking to strike paragraphs 6 and 7 of the Affidavit of Greg Berger and paragraphs 5 through 8 of the Affidavit of Toye Berger from Plaintiff's Response to Defendants' Motion for Summary Judgment.

In paragraphs 6 and 7 of Greg Berger's Affidavit, he states that he had a conversation with Tracy Walters in her office some time after Robison had had two (2) back surgeries in which she stated that when it was appropriate she was going to let Robison and another employee, Ed Chitwood go because they were costing the company too much money due to medical reasons.  Affidavit of Greg Berger, ¶ 6.  Greg Berger further states that while he was working at FWTC he had a non-work-related back surgery and was told by management at FWTC that Greg Berger was costing the company too much money.  Affidavit of Greg Berger, ¶ 7.  In paragraph 5 of Toye Berger's Affidavit, she states that Tracy Walters also told her that FWTC were trying to "get rid of" Robison and Ed Chitwood.  Affidavit of Toye Berger,  ¶ 5.  In paragraph 6, Toye Berger states that she heard Tracy Walters say that Robison would never have another back injury on the company; she does not, however, recall the date this comment was made.  Affidavit of Toye Berger,  ¶ 6.  In paragraph 7, Toye Berger states that Tracy Walters said, referring to Robison's part-time job at the Coliseum setting up stages, "who's to say he won't get hurt there and blame it on us."  Affidavit of Toye Berger, ¶ 7.  Finally, Toye Berger states that she had a lot of opportunities to work with Robison and observe his work

performance, and it was her opinion that Robison was a very good salesperson and his attendance was excellent.  Affidavit of Toye Berger, ¶ 8.

Defendants seek to strike these portions of the Affidavit of Greg Berger and the Affidavit of Toye Berger as containing irrelevant and inadmissible evidence.  Greg Berger was employed by FWTC from March 2000 through October 2002.  Affidavit of Greg Berger, ¶ 4.  Toye Berger was employed by FWTC from August 2001 through May or June 2002.  Affidavit of Toye Berger, ¶ 4.  The employment of both Greg Berger and Toye Berger ended more than one (1) year before Robison's termination.  The court finds that the assertions made by both Greg Berger and Toye Berger to not be in temporal proximity with Robison's termination of employment.  *See Cerutti*, 349 F.3d at 1063.  However, in light of the evidence presented and the court's ruling on Defendant's Motion for Summary Judgment, the court finds Defendants' Motion to Strike Inadmissible Evidence MOOT.

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED.  Defendant's Motion to Strike is MOOT.

Entered: July 12, 2005

    /s/   William C. Lee
William C. Lee, Judge
United States District Court